UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
DK LIPA LLC,                                                 :
                                        Plaintiff,           :
                                                             :   19 Civ. 1405 (LGS)
              -against-                                      :
                                                             :   **OPINION AND ORDER**
SB ENERGY HOLDINGS, LLC (formerly                            :
known as SYBAC SOLAR LLC) and MISF,                          :
LLC,                                                         :
                                        Defendants.          :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff DK LIPA LLC ("DK LIPA") brings this action against Defendants SB Energy Holdings, LLC (formerly known as Sybac Solar LLC) ("SB Energy") and MISF, LLC ("MISF"), alleging breach of contract and tortious interference with contract. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion to dismiss is denied.

I.    BACKGROUND

The following facts are taken from the First Amended Complaint (the "Complaint") and documents attached to or incorporated by reference in the Complaint, and construed in the light most favorable to Plaintiff as the non-moving party. *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

On October 11, 2013, DK LIPA and SB Energy entered into a Right of First Offer Agreement (the "Agreement"). The Agreement is governed by New York law and contains the following relevant Recitals: (1) SB Energy "is developing a photovoltaic solar energy generating project located in Long Island, New York, with an intended power rating of 9.9 MWp AC (the 'Project')"; (2) SB Energy "intends to acquire a parcel of approximately 45.0 acres in Brookhaven, Long Island, in the State of New York (the 'Site') from a third party (the 'Site

Owner') as part of a land purchase agreement (the 'Land Purchase Agreement') for the purpose of locating the Project; and (3) SB Energy "desires to grant [Plaintiff] certain rights with respect to the Project and [Plaintiff] desires to accept such rights . . . ." The Site proposed by SB Energy was Northwood Property, located on the north side of Moriches Middle Island Road, but this is not specified in the Agreement.

The Agreement first provides for an Exclusivity Period of thirty days during which SB Energy agreed that it would not "directly or indirectly . . . accept any offers or proposals for the purchase, acquisition, or financing of the Project." The Exclusivity Period begins upon either (i) the delivery of certain documents by SB Energy to Plaintiff, including the power purchase agreements ("PPAs") negotiated with the Long Island Power Authority, or (ii) "the execution between [Plaintiff] and [SB Energy] of a binding Purchase Agreement and EPC Contract." This provision was the subject of a prior lawsuit.[1] The section refers throughout to the parties as the "Purchaser" and the "Seller." SB Energy provided Plaintiff with three PPAs totaling the 9.9 MWp AC, per the description of the Project: 2013-2176 (.5 MW), 2013-2177 (.5 MW) and 2013-197 (8.95 MW). Northwood Property is identified in the PPAs. Plaintiff and SB Energy were unable to reach an agreement during the Exclusivity Period, and the Agreement terminated no earlier than December 31, 2015.

---

[1] *See DK LIPA LLC v. Sybac Solar LLC*, No. 15 Civ. 6471 (JPO) (S.D.N.Y. 2017). Per the Complaint, prior to providing the required documents, SB Energy (then Sybac Solar LLC) "sent DK LIPA an offer it had received from a third party looking to buy the project, and insisted that DK LIPA had to match this $42,625,000 competing offer. DK LIPA brought suit to prevent Sybac from breaching the Agreement and accepting a third-party bid. This Court issued a temporary restraining order, and later a preliminary injunction, enjoining Defendant Sybac from accepting any offers for the purchase, acquisition, or financing of the Project or Site described in the Agreement." The preliminary injunction was lifted in January 2016.

In the event that the Agreement is terminated, Paragraph 8 -- the provision at issue here -- requires notice and provides for a right of first refusal. Paragraph 8 states:

> Effect of Termination. In the event of a termination . . . for 36 months following termination of the Agreement, [SB Energy] must notify [Plaintiff] within 3 business days of a written offer from a party other than [Plaintiff]. Following receipt of such notification and for 30 days thereafter, [Plaintiff] shall have the one-time right to enter into and execute an EPC Contract or Purchase Agreement under terms identical in every respect to the terms agreed upon as between [SB Energy] and the other party, except that [Plaintiff] may elect to modify the total consideration paid to [SB Energy] under those agreements to be the Purchase Price. This paragraph shall survive the termination of the agreement.

The thirty-six-month period identified in Paragraph 8 ended on December 31, 2018.

The Agreement defines "EPC Contract" as "an agreement for the provision of certain engineering, procurement and construction services entered into between the Purchaser (or an Affiliate of the Purchaser) and the Seller." The Agreement does not define "offer" or "Purchase Agreement."

On November 14, 2016, SB Energy entered into a "Letter of Intent ("LOI") for Partial Co-Development of a Solar Project known as Middle Island Solar Farm" with Defendant MISF. Per the LOI, SB Energy represents that it has three valid PPAs and "the rights to develop, construct, own and operate three solar arrays at the Site," and MISF represents that it is "the development vehicle of the [Site]," which is owned by some of its members. The Site identified, which is to the south of Moriches-Middle Island Road, is located across the street from the Northwood Property. The three PPAs, identified by number, are the same PPAs identified in SB Energy's Agreement with Plaintiff. The LOI contemplates the establishment of a special purpose vehicle owned equally by SB Energy and MISF, "which shall own, finance, and operate the Project and [e]nter into a lease with MISF LLC," and from which "the Net Cash Flow from the Project will be shared equally between the parties." The LOI states that it "does not

3

constitute a binding agreement . . . but shall be considered a state of the present intention of the parties . . . ." Finally, the LOI includes a provision granting MISF an option to purchase the Project for three million dollars, the terms of which "shall be in a separate agreement to be negotiated first . . . ."

SB Energy did not provide Plaintiff with the LOI, or otherwise provide Plaintiff with an opportunity to exercise a right of first refusal in connection to the LOI or related contracts.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, "'all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor.'" *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

## III. DISCUSSION

### A. Breach of Contract Claim

The Complaint contains allegations sufficient to support a facially plausible breach of contract claim. Defendants' motion to dismiss this claim is denied.

### 1. Legal Standard

New York law applies as the Agreement expressly provides that it is governed by New York law. "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *accord Berlin v. Jetblue Airways Corp.*, No. 18 Civ. 1545, 2020 WL 502629, at *8 (E.D.N.Y. Jan. 30, 2020). "New York choice-of-law rules also require[ ] the court to honor the parties' choice [of law provision] insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated." *Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) (quotation marks omitted) (alteration in original).

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *accord Mergers & Acquisition Servs., Inc. v. Eli Glob., LLC*, No. 15 Civ 3723, 2017 WL 1157132, at *6 (S.D.N.Y. Mar. 27, 2017). At issue here is the third element: breach by Defendant SB Energy. The Complaint alleges that SB Energy did not provide to Plaintiff the LOI or subsequent contracts between the Defendants within three business days of receipt, and that the following language in the Agreement required Defendant SB Energy to do so: "[SB Energy] must notify [Plaintiff] within 3 business days of a written offer from a party other than [Plaintiff]."

Under ordinary principles of contract construction, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 85 (N.Y. 2015); *accord Marin v. Constitution Realty, LLC*, 71 N.E.3d 530, 533 (N.Y. 2017)

("[A]greements are construed in accord with the parties' intent.  The best evidence of that intent is the parties' writing.") (alterations in original) (citations omitted).  "[A] contract should be read as a whole, . . . and if possible it will be so interpreted as to give effect to its general purpose." *Marin,* 71 N.E.3d at 534 (alterations in original and quotation marks omitted).  "When interpreting a contract, the construction arrived at should give fair meaning to all of the language employed by the parties, to reach a practical interpretation of the parties' expressions so that their reasonable expectations will be realized."  *Yarom v. Poliform S.P.A.*, 60 N.Y.S.3d 283, 285 (2d Dep't 2017).  "The construction and interpretation of an unambiguous written contract is an issue of law within the province of the court . . . If the language is free from ambiguity, its meaning may be determined as a matter of law on the basis of the writing alone without resort to extrinsic evidence."  *Id.*

"A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'"  *Williams v. Town of Carmel*, 106 N.Y.S.3d 333, 335 (2d Dep't 2019) (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)) (alterations in original).  "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent or where its terms are subject to more than one reasonable interpretation."  *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 37 N.E.3d 78, 80 (N.Y. 2015) (citation omitted).  "On a motion to dismiss a breach of contract claim, we should resolve any contractual ambiguities in favor of the plaintiff."  *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015) (quotation marks omitted).

### 2. The Complaint Adequately Pleads Breach of Contract

Under the terms of the Agreement and accepting all factual allegations in the Complaint as true, the Complaint adequately pleads a breach of contract. Reading Paragraph 8 as a whole, "written offer" can reasonably be understood to include the LOI. Defendants make two arguments: (1) Paragraph 8 is inapplicable to the LOI because it contemplates a Project type or location that is too different than that contemplated under the Agreement; and (2) Paragraph 8 excludes the LOI because the LOI is not a "written offer" under the Agreement. Neither argument is persuasive. Defendants have not shown that the Agreement is unambiguous in a way that supports only their interpretation, as they must to prevail on a motion to dismiss.

  a. **The Agreement Can Reasonably Be Interpreted to Mean that the LOI Triggers the Right of First Refusal.**

The Agreement, and specifically the word "offer" in Paragraph 8, can reasonably be interpreted to mean that the LOI triggers the right of first refusal. Defendants argue that the Agreement "was specific to sale of [a] certain photovoltaic solar generating facility, located on a specific piece of land, pursuant to a specific deal structure," and therefore the term "written offer" in Paragraph 8 "has a clear, narrow definition: a written offer to purchase the [] Project [on the Northwood property]." Defendants' argument is unpersuasive because the Agreement on its face does not limit an "offer" to an offer to a *purchase*,[2] nor to a particular property. The notice

---

[2] Defendants' argument that a right of first refusal can apply only to the sale of an asset is not supported by their caselaw, which involved a right of first refusal to buy real property and ownership interests, but did not limit the right to the sale of an asset. *See, e.g., M & A Motors, Inc. v. Disco Realty, Inc.,* 806 N.Y.S.2d 244, 246 (2d Dep't 2005) (stating that "[t]he general rule is that a right of first refusal . . . does not give its holder the power to compel an unwilling owner to sell" "[i]n an action for specific performance of a right of first refusal to purchase real property." (quotation marks omitted)); *LIN Broad. Corp. v. Metromedia, Inc.*, 74 N.Y.2d 54, 60, 542 N.E.2d 629 (1989) (stating that "[t]he effect of a right of refusal . . . is to bind the party who desires to sell not to sell without first giving the other party the opportunity to purchase at the price specified" in an action regarding a right of first refusal to purchase an ownership interest).

7

obligation is triggered by "a written offer from a party other than [Plaintiff]." Even the general terms of the Agreement are not limited to a particular property. The Agreement specifies that a "Site" will be located for the planned facility, and defines "Site" as "a parcel of approximately 45.0 acres in Brookhaven, Long Island, in the State of New York . . . ." Similarly, the Agreement defines "Laws" as "any applicable . . . law . . . having the effect of law in the United States . . . or any county, city or other political subdivision thereof on which the Site is located . . . ." Nothing in the Agreement further assumes or limits the location of the Site. That the LOI contemplates a different location from the one that Plaintiff and SB Energy previously discussed therefore does not dictate, by the terms of the Agreement, that the LOI is not an "offer" under Paragraph 8.

The project anticipated under the LOI is also consistent with the Agreement's definition of the "Project" as "a photovoltaic solar energy generating project located in Long Island, New York with an intended power rating of 9.9 MWp AC." The LOI similarly contemplates a "solar project" which would operate "three solar arrays" on a property located on Long Island. The LOI also references the same PPAs that SB Energy provided Plaintiff under their Agreement, indicating that the power rating is the same in both the LOI and the Agreement. Indeed, the Complaint alleges that they are the same Project, which was simply moved to a new location.

### b. The Ambiguity in Paragraph 8 Precludes Dismissal

Defendants argue that the deal structure under the Agreement is "wholly inapplicable to the joint venture contemplated by the LOI." Per Defendant's argument, under the Agreement, Plaintiff would purchase the Site for building the Project, and SB Energy would then construct the Project pursuant to an EPC Contract, "with the purchaser's payment of the full Purchase Price made in accordance with 'milestone' payments in the EPC Contract." This structure, per

Defendants, "represents the traditional 'turnkey' sale of a photovoltaic solar energy facility that is typical to both industry practices and SB Energy's business model: SB Energy completes the Northwood Project and is paid in full over the course of construction."  The LOI, in contrast, purportedly calls for a joint venture project that is "completely incompatible" with Paragraph 8, because the project would be located on a leased -- not purchased -- plot of land, and the deal structure is a co-development rather than a "Purchase Agreement."  "[Plaintiff] could not have conceivably matched the terms of a 'Purchase Agreement' because a Purchase Agreement did not exist."  This argument is unpersuasive.

The Agreement can reasonably be read to support Plaintiff's claim of breach of Paragraph 8 -- that the Project contemplated in the Agreement is the same Project contemplated in the LOI, using the same PPAs, but located across the street from the originally proposed location.  The LOI contemplates the creation of a special purpose vehicle, jointly owned by Defendants, "which shall own, finance and operate the Project," lease the project site from MISF, and through which MISF has the option to purchase the Project.  This deal structure is arguably similar in nature to the agreement contemplated between Plaintiff and SB Energy, whereby SB Energy would have entered into an EPC Contract with Plaintiff through which the Project would be financed and developed, on a Site purchased by Plaintiff, resulting in Plaintiff's ownership of the Project.  Such a deal structure may be similar enough in nature to that contemplated by the Agreement for the LOI to have triggered Paragraph 8.  *Cf., Whiteface Resort Holdings, LLC v. McCutchen*, 860 N.Y.S.2d 308, 310 (3d Dep't 2008) ("We note, however, that it has been repeatedly held that the sale of a portion of the encumbered property—in the absence of any objection to a partial sale—does trigger the right of first refusal with respect to that

portion."). On a motion to dismiss a breach of contract claim, any contractual ambiguities must be resolved in favor of the plaintiff. *See Luitpold*, 784 F.3d at 86.

### B. The Tortious Interference Claim is Sufficiently Pleaded

The claim of tortious interference "requires: '[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)). Defendants dispute only the fourth element; they assert in a conclusory fashion that, based on the arguments challenging the breach of contract claim, the Complaint does not plausibly plead a breach of contract element as required for the tortious interference claim. For the reasons above, this argument is unpersuasive.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket Number 29.

Dated: June 4, 2020
      New York, NY

LORNA G. SCHOFIELD<br>
UNITED STATES DISTRICT JUDGE